IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAST ATLANTIS CAPITAL LLC, LOLA LLC, LULU LLC, GOODBUDDY SOCIETY LLC, FRIENDLY TRADING LLC, and SPEED TRADING LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 04 C 397 |
| CHICAGO BOARD OPTIONS EXCHANGE, INC., AMERICAN STOCK EXCHANGE LLC, PACIFIC EXCHANGE, INC., PHILADELPHIA EXCHANGE, INC., AGS SPECIALIST PARTNERS, BEAR HUNTER STRUCTURED PRODUCTS LLC, BEAR WAGNER SPECIALISTS LLC, BOTTA CAPITAL MANAGEMENT LLC, COHEN, DUFFY, MCGOWAN & CO., INC., D.A. DAVIDSON & CO., INC., EQUITEC PROPRIETARY MARKETS, LLC, EQUITEC STRUCTURED PRODUCTS, LLC, EQUITEC TRADING LLC, EQUITEC-PREMIER LLC, EQUITEC-BROWN LLC, EQUITEC-FELDMAN LLC, EQUITEC-FURMAN LLC, EQUITEC-SCHWARTZ LLC, GENEVA DPM LLC, GROUP ONE TRADING LP, KNIGHT FINANCIAL PRODUCTS LLC, KNIGHT TRADING GROUP, INC., LABRANCHE & CO., INC., LABRANCHE STRUCTURED PRODUCTS LLC, MDNH TRADERS LLC, MDNH PARTNERS LP, MORGAN STANLEY, MORGAN STANLEY DW, INC., MORGAN STANLEY & CO., INC., SLK-HULL DERIVATIVES LLC, SPEAR, LEEDS & KELLOGG LP, SPECIALISTS DPM LLC, SUSQUEHANNA INTERNATIONAL GROUP LLP, SUSQUEHANNA INVESTMENT GROUP, SUSQUEHANNA SECURITIES, TD OPTIONS LLC, VAN DER MOOLEN OPTIONS USA LLC, VAN DER MOOLEN HOLDINGS NV, and WOLVERINE TRADING LP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Last Atlantis Capital LLC, Lola LLC, Lulu LLC, Goodbuddy Society LLC, Friendly Trading LLC, and Speed Trading LLC allege numerous violations of federal and state law by defendants, as well as violations of rules promulgated by the Securities and Exchange Commission ("SEC"). Defendants include the Chicago Board Options Exchange, Inc., the American Stock Exchange LLC, the Pacific Exchange, Inc., and the Philadelphia Exchange, Inc. (collectively, the Exchange Defendants), as well as 35 securities brokers and/or dealers (collectively, the Market Maker Defendants). Specifically, plaintiffs allege that defendants violated § 1 of the Sherman Act and § 4 of the Clayton Act (Count I); § 1 of the Sherman Act and § 16 of the Clayton Act (Count II); § 10b of the Exchange Act and SEC Rules 10b-5 and 11Ac1-1 (Count III). Plaintiffs also allege that defendants are in breach of contract (Count V);[1] have engaged in common law fraud;[2] are in breach of their fiduciary duties (Count VI); are in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/2 (Count VII); and have engaged in tortious interference with the plaintiffs' businesses (Count VIII).

The plaintiffs' allegations concern activities related to the trading of options. An option is a contract that provides its owner the right to purchase or sell a fixed quantity of the

---

[1] The complaint does not include a Count IV.

[2] This count is unnumbered in the complaint.

underlying interest (here, securities traded on a national securities exchange) at a fixed price when certain conditions are met. Dealers, who effect transactions for themselves, and brokers, who effect transactions for others, supply the market for publicly-traded options. A bid price is the highest price at which a dealer or broker is willing to buy an option; an ask or offer price is the lowest price at which a dealer or broker is willing to sell an option. The exercise price is the price at which the option owner has the right to exercise the option to buy or sell. The price of a given option is affected by a wide variety of market factors, including the current price of the underlying interest, the forecast volatility, and supply and demand.

Plaintiffs allege that defendants have acted in concert to artificially restrict the prices of options, forcing plaintiffs to buy higher and sell lower than would normally happen in a freely competitive market. Plaintiffs also allege that defendants have failed to complete orders placed by the plaintiffs in a timely manner or at all; changed the bid or ask prices of an option after plaintiffs had placed an order to buy or sell; failed to provide notice to plaintiffs in a timely manner that purchases or sales were completed; and adjusted the price of orders after providing notice to plaintiffs that the orders had already been completed. Plaintiffs allege that, collectively, these practices have placed

competitive restraints on the options trading market. Defendants move to dismiss the complaint. I GRANT that motion.

I.

On a motion to dismiss, I accept all well-pleaded allegations in the complaint as true, *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997), and grant the motion only if the plaintiff can prove no set of facts to support the allegations in her claim. *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998).

In Counts I and II of the complaint, plaintiffs allege violations of § 1 of the Sherman Act and §§ 4 and 16 of the Clayton Act. Defendants argue that these antitrust counts must be dismissed, as the enactment of the Securities Exchange Act of 1934, 15 U.S.C. § 78 *et seq.*, and subsequent regulation by the SEC impliedly repealed the application of antitrust law with respect to options trading. Implied repeal arises in two situations. First, repeal is implied "when a federal regulatory scheme is so pervasive that 'agency initiative or full deliberation controls every aspect of' the defendant's behavior." *Amer. Agriculture Movement, Inc. v. Board of Trade*, 977 F.2d 1147, 1158 (7th Cir. 1992); *see also Gordon v. New York Stock Exch.*, 422 U.S. 659 (1975). Second, implied repeal arises when the activities attacked either were required by law or the relevant agency or were scrutinized and approved by the relevant agency. *Id. See also Verizon Comm., Inc. v. Trinko*, 124

S.Ct. 872, 878 (2004) (finding implied repeal did not apply to the Telecommunications Act of 1996, in part because of a savings clause); *Thill Sec. Corp. v. New York Stock Exch.*, 633 F.2d 65, 69-70 (7th Cir. 1980) (finding implied repeal did apply to an antirebate rule, regulated by the SEC); *Kaplan v. Lehman Bros.*, 371 F.2d 409, 410-411 (7th Cir. 1967) (finding implied repeal did apply to SEC regulations regarding commission rates).

Defendants argue that the SEC's regulation of options trading is so pervasive that judicial action under the antitrust laws would interfere with the objectives of that regulation. The SEC has a long history of regulating options trading, beginning with § 2 of the Securities Exchange Act of 1934, which provided for regulation of a national securities market. 15 U.S.C. § 78b. Congress specifically gave the SEC specific and plenary authority to set the terms and conditions of options trading. *See* 15 U.S.C. § 78i; H.R. Rep. No. 97-626(I) (1982) (clarifying the jurisdiction of the SEC over options trading). The SEC has promulgated many rules concerning options trading, both specifically and by expanding more general rules to also cover options trading. *See* 17 C.F.R. § 240.11Ac1-1; Firm Quote and Trade-Through Disclosure Rules for Options, Exchange Act Release No. 34-43591, 2000 WL 1721161 (Nov. 17, 2000).

On September 11, 2000, the SEC issued a settlement order concerning a number of exchanges and alleged anti-competitive

conduct. Certain Activities of Options Exchanges, Exchange Act Release No. 43268, 2000 WL 1277616 (Sept. 11, 2000)("Settlement Order"). The Settlement Order required the exchanges to implement and enforce rules concerning aspects of options trading, including order processing, quotes, and reporting procedures. *Id.* Since that date, the SEC has continued to monitor and regulate the options trading market, recently publishing a request for comments/concept release for potential rules addressing efficiency in the options trading markets and potential conflicts of interest. Competitive Developments in the Options Markets, Exchange Act Release No. 34-49175, 2004 WL 210588 (Feb. 3, 2004).

Given this history of consistent regulation of the options trading market, the SEC's regulatory scheme can be said to be pervasive in this area. Even plaintiffs' complaint illustrates this pervasiveness; plaintiffs allege violations of SEC rules and of the Settlement Order, discuss the SEC's investigation of options trading, and seek relief, in part, in the form of new Exchange Rules. Applying federal antitrust law in this area creates the very real possibility of subjecting the defendants to conflicting standards of conduct. *Gordon*, 422 U.S. at 689 (noting that conflicting standards are likely to arise because of the different aims of antitrust law and SEC regulation). That the defendants' alleged actions may violate both antitrust law and SEC regulations does not control. The question instead is, do "the antitrust laws

conflict with an overall regulatory scheme that empowers [the SEC] to allow conduct that the antitrust laws would prohibit." *In re: Stock Exch. Options Trading Antitrust Litigation*, 317 F.3d 134, 149 (2ᵈ Cir. 2003) (holding that the antitrust laws were impliedly repealed with respect to options trading). In this case, they do. The motion to dismiss Counts I and II is GRANTED.

II.

Defendants argue that plaintiffs have not pleaded Count III, alleging violations of § 10b of the Exchange Act and SEC Rule 10b-5, with the required specificity. Under Rule 10b-5, "the plaintiff must establish that (1) the defendant made a misstatement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement or omission proximately caused the plaintiff's damages." *Otto v. Variable Annuity Life Inc. Co.*, 134 F.3d 841, 851 (7ᵗʰ Cir. 1998). "[P]leading fraud with specificity is both an element of the SEC Rule 10b-5 cause of action and a pleading requirement of the Federal Rules." *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 280-81 (7ᵗʰ Cir. 1996); *see also* Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7ᵗʰ Cir. 1990). In addition, the complaint must comply with the

7

pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), which requires the complaint to specify each allegedly misleading statement and the reasons why it is misleading, and to "state with particularity the facts giving rise to strong inference that the defendant acted with" scienter.

Plaintiffs' pleadings fail in several respects. First, despite the length of the 99-page complaint, plaintiffs fail to clearly plead the "what" of the alleged fraud. Plaintiffs generally refer to misleading price quotes, implied representations, and false representations to the public, the media, and the SEC, but fail to identify even a single false or misleading statement, express or implied. Plaintiffs argue that they do not have to do so because documentation of the facts is in the hands of the defendants, and defendants are aware of their own conduct. While plaintiffs need not detail each allegedly fraudulent transaction (of which they claim there are hundreds, if not thousands), they must plead at least one such transaction where, if the plaintiffs' allegations are true, defendants' statements are false. *See Tricontinental Indus. LTD v. Anixter*, 215 F. Supp. 2d 942, 947-48 (N.D. Ill. 2002).

Plaintiffs also fail to provide the "who" required by Rule 9(b) and the PSLRA. The only allegations that are specifically tied to a particular defendant involve two paragraphs quoting from releases from the Pacific Exchange and the Philadelphia Exchange,

which discussed the exchanges auto-execution systems for processing orders. Every other allegation is directed at the Exchange defendants, the Market Maker defendants, or simply "defendants." Such general pleading, lumping all defendants into a single group, is insufficient to meet the required pleading standards. *Tricontinental*, 215 F. Supp. 2d at 947 (citing *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'")).

Plaintiffs also fail to satisfy the "when" pleading requirement. Plaintiffs state that the fraudulent conduct by the defendants took place over a time period stretching from September 2000 until the present. Such a large and vague time period does not meet the requirement for particularity. *Cathedral Trading, LLC v. Chicago Bd. Options Exch.*, 199 F. Supp. 2d 851, 857-58 (N.D. Ill. 2002). Similarly, plaintiffs fail on the "why" component. Rather than explain why the few statements cited in the complaint are false, plaintiffs allege simply that the statements are false or misleading. Such boilerplate statements of falsity are insufficient. *Id.* at 857 (stating that plaintiffs must explain in the complaint what statements are false and why they are false).

In view of these serious defects in pleading, plaintiffs do not allege facts to support a "strong inference of scienter." 15

9

U.S.C. § 78u-4(b)(2). The motion to dismiss with respect to Count III is GRANTED.

III.

Counts I and II are dismissed pursuant to the doctrine of implied repeal. Count III is dismissed for failure to meet the pleading requirements of Rule 9(b) and the PSLRA. As I have dismissed all federal claims in the complaint, I decline to exercise jurisdiction over the remaining state law claims. The complaint is DISMISSED.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: March 30, 2005