# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LAST ATLANTIS CAPITAL LLC, LOLA LLC, )
LULU LLC, GOODBUDDY SOCIETY LLC, )
FRIENDLY TRADING LLC, SPEED TRADING )
LLC, BRYAN RULE, BRAD MARTIN, AND )
RIVER NORTH INVESTORS LLC, )
)
      Plaintiffs, )
)
  v. ) Nos. 04 C 0397
)
)
AGS SPECIALISTS LLC, BEAR HUNTER )
STRUCTURED PRODUCTS LLC, BEAR WAGNER )
SPECIALISTS LLC, GROUP ONE TRADING )
LP, KNIGHT FINANCIAL PRODUCTS LLC, )
CITIGROUP DERIVATIVES MARKETS, INC., )
SLK-HULL DERIVATIVES LLC, GOLDMAN )
SACHS EXECUTION AND CLEARING LP )
f/k/a SPEAR, LEEDS & KELLOGG LP, )
SUSQUEHANNA INVESTMENT GROUP, TD )
OPTIONS LLC, AND WOLVERINE TRADING )
LLC, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

This case involves alleged violations of federal and state law based on improper securities trading practices by defendants.[1] Now before me is defendant Citigroup Derivatives Markets, Inc.'s ("CDMI") motion for summary judgment.[2] For the following reasons,

---

[1] *See* Amended Consolidated Complaint (Docket #286).

[2] CDMI initially filed a motion to dismiss, but that motion was converted into a summary judgment motion on June 16, 2008.

CDMI's motion is granted.

I.

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant initially bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met this burden, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading," but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). I must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

II.

Defendant Knight Financial Products, LLC ("KFP") operated as a securities broker/dealer through December 9, 2004, when it sold its "specialist business" to Citigroup Financial Products, Inc. ("Citigroup") for $225 million dollars.[3] The purchased assets were subsequently assigned by Citigroup to defendant Citigroup Derivatives Markets Inc. ("CDMI").[4] Citigroup and CDMI are distinct corporate entities, with no relation to KFP or the other parties to the asset purchase agreement. It is unclear what KFP's current business is, if anything. However, it is undisputed that although KFP ceased its "specialist business" when the asset sale closed, it remains to date an active, distinct corporate entity and a defendant in this action.

CDMI now moves for summary judgment, arguing that it did not assume liability for defendant KFP's pre-asset sale alleged wrongdoing and that plaintiffs have not alleged any post-asset sale

---

[3] Neither party provides information as to how the $225 million dollars was divided among the sellers. Citigroup is not a party to this action.

[4] On December 17, 2007, plaintiffs moved to join CDMI as a defendant in this action on a successor liability theory, pursuant to Federal Rule of Civil Procedure ("FRCP") 25(c). Plaintiffs' motion for joinder was granted on February 7, 2007. CDMI did not oppose joinder at that time, but reserved the right to file the present motion to dismiss and to challenge FRCP 25(c) joinder.

bad acts by CDMI itself.[5] Plaintiffs contend that CDMI is liable for KFP's alleged bad acts (both pre- and post-asset purchase) under a successor liability theory, and in the alternative, that "there is an independent factual basis from which it can be strongly inferred that CDMI acted with the requisite scienter with respect to the thousands of [o]rders alleged to have been mishandled by CDMI's exchange specialists between December 10, 2004 and April 2007."[6] (*See* Pls.' Supp. Resp. 2.)

The assets subject to the purchase agreement, now owned by CDMI, include: 1) substantially all the assets of KFP; 2) KFP's business of acting as a market maker and specialist in the listed options; 3) leases for KFP's offices; 4) the business contracts of KFP; and 5) appointments on exchanges to trade all the option classes traded by KFP as of the closing date. CDMI also assumed a number of KFP's business-related liabilities, but it did not retain liability resulting from the present action, if any, or liability

---

[5] Because defendant CDMI references my previous orders and various parties' prior filings, a general familiarity with the facts, as alleged in the complaint, is presumed. *See Last Atlantis Capital LLC v. Chicago Bd. Options Exchange, Inc.*, 533 F.Supp.2d 828 (N.D.Ill.2008); *Last Atlantis Capital LLC v. Chicago Bd. Options Exchange, Inc.*, 455 F.Supp.2d 788 (N.D.Ill.2006); *Last Atlantis Capital LLC v. Chicago Bd. Options Exchange, Inc.*, No. 04 C 397, 2005 WL 3763262 (N.D.Ill. Mar. 30, 2005).

[6] Plaintiffs' opposition brief also included arguments that documents submitted by CDMI should not be considered on a motion to dismiss. CDMI's motion to dismiss was converted to a motion for summary judgment on June 16, 2008. Accordingly, plaintiffs' arguments on this issue are moot.

for "any other [p]roceedings initiated or filed (i) making claims based on the same set of facts or circumstances that are the specific basis of [the present action] and (ii) that relate solely to events, facts or circumstances arising prior to [December 10, 2004]." (*See* Freidman Decl. Ex. E.)

III.

Under New York law,[7] a corporation that acquires the assets of another corporation is not liable for the torts of its predecessor unless one of the following applies: (1) the successor corporation expressly or impliedly assumed liability; (2) there was a consolidation or merger of the two corporations; (3) the successor corporation is a "mere continuation" of the predecessor; or (4) the transaction was entered into fraudulently to escape liability. *Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (N.Y. 1983). CDMI argues that none of these exceptions apply because 1) there is no evidence of fraud, 2) the purchase agreement expressly states that KFP retains all liabilities resulting from the present action and all related claims based on events occurring prior to closing, and 3) the *de facto* merger and "mere continuation" exceptions are not applicable because the asset sale was an arms-length transaction between companies with no continuity of ownership and significantly different senior management. CDMI is right. Even

---

[7] The parties agree that New York successor liability law applies.

5

viewing the facts in a light most favorable to plaintiffs, none of the exceptions apply here.

With respect to the first and fourth exceptions, plaintiffs simply offer a general statement that at trial they may be able to prove these exceptions. They present no evidence indicating that the asset sale was a fraudulent transaction entered into for the purpose of sheltering KFP from liability, that the asset sale was something other than an arms-length transaction, or that $225 million dollars was not an appropriate value for the assets sold. Further, the purchase agreement clearly states that this lawsuit, along with any action based on the same set of underlying facts and events, is specifically excluded from the liabilities transferred to CDMI as a result of the asset sale – KFP expressly retained all such liability. Therefore, because CDMI did not assume liability for this action[8] and there is no evidence that the asset sale was a fraudulent transaction, the first and fourth exceptions do not apply.

---

[8] Plaintiffs suggest that correspondence from KFP to CDMI in which KFP requests CDMI indemnify it for a lawsuit related to the present action is relevant to one of the exceptions. I presume this correspondence was provided to show an implied assumption of liability for the consolidated case, although plaintiffs do not clearly state this. Regardless, the correspondence shows CDMI expressly rejected KFP's request for indemnification pursuant to the excluded liabilities clause in the purchase agreement and the lawsuit at issue in the correspondence was subsequently dismissed. KFP's rejected request for indemnification for a dismissed case does not provide a genuine issue for trial on successor liability.

The same is true for the "mere continuation" and *de facto* merger exceptions. While the facts show CDMI operated a specialist business and used the assets it acquired from KFP, including personnel and offices, for that business, continuation of a company's business alone does not trigger the *de facto* merger or "mere continuation" exceptions. A "mere continuation" is a continuation of the corporate entity itself – not just a continuation of the transferred business. *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y. 1977). This exception "envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer...something in the nature of a corporate reorganization, rather than a mere sale." *Id.*; *see also Schumacher*, 451 N.E.2d at 198; *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 46 (2d Cir. 2003). In this case, it is undisputed that four years after execution of the purchase agreement, KFP is still in existence as a distinct corporate entity and defendant in this action. While CDMI has absolutely continued the former business of KFP, there is no evidence showing that KFP and CDMI have a common identity of directors or shareholders, or that CDMI is merely a corporate reorganization of KFP. Accordingly, CDMI is not a "mere continuation" of KFP.

Similarly, a *de facto* merger occurs when there is a transaction that is in substance a consolidation or a merger of two

companies, one being the successor to the other, where the transaction is not technically in the form of a merger or consolidation. *See Schumacher*, 451 N.E.2d at 198; *Cargo Partner*, 352 F.3d at 45. In determining whether a *de facto* merger has occurred, courts consider the following: 1) continuity of ownership; 2) cessation of predecessor's ordinary business and dissolution of the predecessor as soon as practical after the transaction; 3) assumption by the successor of liability necessary for the uninterrupted continuation of the predecessor's business; and 4) continuity of management, personnel, assets, physical location and general business operation. *In re New York City Asbestos Litig.*, 789 N.Y.S.2d 484, 486 (N.Y. App. Div. 2005). New York courts consider continuity of ownership "a necessary element of any de facto merger finding." *Id*. at 487. This element "exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets." *Id.* at 486-87.

Here, plaintiffs provide no evidence of continuity of ownership. In other words, there is no evidence showing KFP or any of the sellers are related in any way to Citigroup or CDMI, that the asset sale was financed with Citigroup or CDMI stock, or that KFP (or the other sellers) continued to profit from CDMI's business operations after the asset sale in any way. Lack of continuity of

8

ownership alone makes the *de facto* merger exception inapplicable. *New York v. Nat'l Serv. Indus., Inc.,* 460 F.3d 201, 215 (2d Cir. 2006)(finding no successor liability under the *de facto* merger exception where there was no evidence of continuity of ownership); *NYC Asbestos Litig.*, 789 N.Y.S.2d at 484 (same); *Cargo Partner,* 352 F.3d at 46 (stating "we are confident that the doctrine of de facto merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership."). As a matter of law, none of the exceptions to New York's general rule against successor liability apply to CDMI. Accordingly, CDMI cannot be held accountable for KFP's pre- or post-asset sale actions under a successor liability theory.

Plaintiffs allege in the alternative that even if successor liability does not apply, CDMI is independently liable for its own post-closing wrongdoings. In support of this argument, plaintiffs rely on CDMI's knowledge that KFP was undergoing an AMEX investigation and numerous other regulatory inquires at the time of the asset sale. But the AMEX investigation and other inquiries only concerned actions by KFP prior to the asset sale for which CDMI is not liable. Further, KFP stopped acting as a specialist on the AMEX in January of 2004 (almost a year prior to the asset sale), CDMI itself never acted as a specialist on the AMEX, and CDMI was not a party to the AMEX settlement. Therefore, KFP's AMEX activities cannot be imputed to KFP and CDMI cannot be liable for

9

its own wrongdoing on an exchange on which it never acted as a specialist. Further, there are no allegations that any of the other regulatory inquiries KFP disclosed to CDMI in the purchase agreement extended to post-asset sale acts by CDMI. CDMI's knowledge of pre-asset sale investigations and inquiries into KFP's actions is not enough to support independent allegations against CDMI for post-asset sale actions by CDMI.[9]

IV.

For the reasons stated above, defendant CDMI's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 10, 2009

---

[9] Plaintiffs do reference a settlement agreement between CDMI and the Chicago Board Options Exchange, Inc. ("CBOE") where CDMI admits that it "failed to continuously display quotes" on various trade dates from December 2004 through July 2005. (See Pls.' Opp. Mem., Ex. B.) The substance of this settlement agreement does not appear to support the same type of wrongdoing alleged in the consolidated complaint. Accordingly, the CBOE settlement does not support plaintiffs' allegations of scienter as to CDMI with respect to the claims at issue in this action.