IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
LAST ATLANTIS CAPITAL, LLC,   )
et al.,                       )    Nos. 04 C 0397
                              )         05 C 5600
        Plaintiffs,           )         05 C 5671
                              )
vs.                           )    JUDGE ELAINE BUCKLO
                              )    MAGISTRATE JUDGE ARLANDER KEYS
AGS SPECIALIST PARTNERS,      )
et al.,                       )
                              )
        Defendants.           )
```

**MEMORANDUM OPINION AND ORDER**

The plaintiffs in this case allege violations of §10b of the Exchange Act and SEC Rule 10b-5 (a), (b) and (c), as well as state law claims, including breach of contract, common law fraud, breach of fiduciary duty, tortuous interference, and violations of the Illinois Consumer Fraud and Deceptive Practices Act. The case has a long history here; filed in 2004, it has meandered through the discovery stage, giving rise to more disputes, and requiring far more judicial intervention and attention than most. The case is currently before the Court on two deposition-related motions.

The first motion before the Court is plaintiffs' motion for an order directing Goldman Sachs to comply with rules 30(b)(6) and 30(c)(2). According to the plaintiffs, they served GSEC with a deposition notice, seeking 30(b)(6) testimony concerning eight delineated areas of inquiry. GSEC agreed to produce Warner Howe

for deposition, but advised the plaintiffs – two days before his scheduled deposition – that he was prepared to testify about just one of the 8 topics; GSEC objected to the remainder of the topics. What's worse, the plaintiffs contend, is that, at the deposition, GSEC further limited discovery by instructing Mr. Howe not to answer numerous questions because they were "beyond the scope" of that topic. The plaintiffs seek an order directing GSEC to comply with Rule 30(b)(6) and 30(c), and awarding them the costs of conducting further depositions necessitated by GSEC's behavior.

The defendants offer a slightly different take on the events leading up to Mr. Howe's deposition. According to the defendants, after deposing several 30(b)(6) witnesses, the plaintiffs served the May 15, 2013 deposition notice, and the defendants designated prior testimony as responsive 30(b)(6) testimony for several of the topics delineated therein – a proper procedure and one to which plaintiffs' counsel did not object. Additionally, the defendants designated Mr. Howe to offer additional 30(b)(6) testimony on topics 2 and 4. The defendants objected to several of the topics on various grounds. Plaintiffs' counsel proceeded as if he agreed with the plan. Then, after getting the additional deposition testimony and going along with the plan laid out by the defendants, he moved to compel and charged them with violating the rules of discovery.

The two sides' versions are not entirely inconsistent. It is true, as the plaintiffs emphasize, that the defendants produced a 30(b)(6) witness who was not prepared to testify about all 8 topics listed in the deposition notice; and it is also true that counsel instructed the witness not to answer questions. The real question is whether, under all of the surrounding circumstances, those actions were proper.

To be sure, as the plaintiffs point out, when served with a 30(b)(6) notice, a corporate defendant is required to produce a designated representative who is fully prepared to testify about all topics identified in the deposition notice. But, as the Court sees it, the defendants appear to have done that – way back in 2008. On December 4, 2008, the plaintiffs deposed Dennis Kerlin, who offered 30(b)(6) testimony on behalf of both GSEC and SLK-Hull. Additionally, in response to the May 15, 2013 deposition notice, GSEC and SLK-Hull designated as 30(b)(6) testimony certain portions of John Smollen's testimony from his deposition on March 19, 2013. The plaintiffs have not suggested that these witnesses were unprepared or improperly designated. The plaintiffs do complain that Donna McDonald, who was also deposed in March of this year, had trouble remembering things. But it's not clear that she was intended to serve as a 30(b)(6), and, in any event, having waited to depose her until 2013, it's hardly surprising that she had trouble recalling events from a

3

decade earlier.

When the plaintiffs served an additional 30(b)(6) notice, with discovery coming to a close, the defendants responded appropriately. And, in the Court's view, they have cooperated with the plaintiffs to a reasonable extent. Given the topics listed and the timing of the notice, it does seem as if the notice was intended more to cause work for the defendants than to yield anything new in the way of relevant evidence.

Very briefly, the eight topics listed in the notice covered: (1) defendants' efforts to advertise, promote or market products or services offered concerning the trading of options; (2) the process by which the specialists disseminated quotes, received and executed orders, etc.; (3) information on profits and losses from trading options; (4) defendants' understanding of the applicable laws, rules, customs and practices to ensure compliance with SEC and Exchange rules; (5) information about the various types of audit trail data created by the Exchanges and third parties; (6) information about SEC investigations; (7) the factual bases for defendants' affirmative defenses; and (8) information about the defendants' websites, including statements made and documents posted thereon.

The defendants designated prior deposition testimony in response to several of the topics, objected to others, and advised counsel for the plaintiffs that they would produce one

additional witness concerning topic two, which, sought information concerning:

> [t]he process by which the defendant and/or individual specialists employed by the defendant: (a) disseminated quotes for the options that it/they traded as a specialist; (b) received, identified and executed orders and requests to cancel orders that were electronically transmitted or routed to defendant's specialists from Auto Ex for "manual" executions, and 9c) reported, confirmed, and/or disseminated information about defendant's receipt and execution of orders and requests to cancel orders.

Deposition Notice, p. 18, ¶II (attached as Exhibit A to the Declaration of Andrew Friedman in Support of Plaintiffs' Motion). The defendants advised that Mr. Howe would also offer testimony with regard to topic four, which sought information concerning "Defendant's understanding of the laws and rules, customs and practices applicable to its specialist business and defendant's efforts to ensure compliance with all rules enacted by the SEC ("SEC Rules") and/or the Exchanges ("Exchange Rules") that are specifically applicable to the handling of orders to buy and sell options by exchange specialists, market makers and floor brokers on the Exchanges (collectively referred to herein as "Order Handling Rules"), and rules concerning the maintenance and destruction of documents, data and records, including but not limited to SEC Rules 17a-3 and 17a-4, CBOE Rule 15.1 and similar rules promulgated by the other Exchanges." Deposition Notice, p. 18-19, ¶IV. More specifically, the defendants advised that Mr. Howe would testify "solely regarding efforts to ensure compliance

5

with Order Handling Rules." GSEC and SLK-Hull's Responses and Objections to Plaintiffs' Revised Rule 30(b)(6) Notice, p. 7 (attached as Exhibit F to the Declaration of Eric A. Bensky in Opposition to Plaintiffs' Motion to Compel Additional 30(b)(6) Testimony).

As the plaintiffs correctly note, Rule 33 provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." It is clear from the parties' submissions that both sides have instructed witnesses not to answer when none of these applied. But, candidly, had the parties sought court intervention prior to Mr. Howe's deposition, the Court would have entered an order limiting it to the scope sketched out by the defendants. In fact, if the defendants had sought court intervention to bar the plaintiffs from taking additional 30(b)(6) depositions, the Court likely would have granted such relief. The defendants provided 30(b)(6) testimony – they presented Mr. Kerlin in 2008 and Mr. Smollen earlier this year; even now, the plaintiffs have not explained what additional testimony they require or why the testimony they got was inadequate. As generally seems to be the case here, the plaintiffs simply want more. The time has come to say: "Enough." The Court appreciates that the case involves complex issues, but the plaintiffs have had nine years to build their case; if they

haven't been able to do so by now, additional discovery is not going to help them . . . which brings the Court to the second motion.

The second motion before the Court is GSEC and SLK-Hull's motion for a protective order concerning discovery directed at Duncan Niederauer and Stuart Sternberg.  The plaintiffs served both of these individuals with subpoenas on May 9, 2013, requiring them to appear for deposition on, respectively, May 29th and May 30th.  Goldman Sachs Execution & Clearing (GSEC) and SLK-Hull Derivatives have moved, pursuant to Federal Rule of Civil Procedure 26(c), for an order forbidding the plaintiffs from taking those depositions.

Federal Rule of Civil Procedure 26(c) allows a party or a person from whom discovery is sought to "move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken."  Fed. R. Civ. P. 26(c)(1).  The Rule allows the court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Id.*  Among other things, the Rule empowers the court to enter an order "forbidding the disclosure or discovery"; "specifying terms, including time and place, for the disclosure or discovery"; or "prescribing a discovery method other than the one

selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(A), (B), (C).

Defendants GSEC and SLK-Hull Derivatives ask the Court to enter an order forbidding the plaintiffs from taking the depositions of Duncan Niederauer and Stuart Sternberg. Duncan Niederauer is the current head of the New York Stock Exchange, but was formerly the head of GSEC. Stuart Sternberg is a current owner of the Tampa Bay Rays baseball franchise, and was formerly the co-head of SLK-Hull. The plaintiffs have subpoenaed them both for deposition. The Goldman Sachs defendants argue that neither has any first hand knowledge of the underlying facts of this case; nor were they in any way involved in the events underlying the plaintiffs' complaint. They argue that, because Mr. Niederauer and Mr. Sternberg are high level executives who had absolutely nothing to do with this case, the Court should enter an order forbidding the plaintiffs from deposing them. The defendants represent that, although they have repeatedly asked the plaintiffs to explain what information these witnesses might possess, the plaintiffs have consistently declined to elaborate on what it is they hope to gain in terms of discovery from deposing these very high level witnesses.

The plaintiffs argue that high level executives are not automatically exempt from the discovery process. That is true, but, as the defendants note, there are some special rules that

8

apply to these types of witnesses. "Because high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions," they may need "some measure of protection from the courts"; courts often decline to compel the deposition of such witnesses absent some showing that the executive "has unique or personal knowledge of the situation." *Meharg v. I-Flow Corp.*, No. 1:08-cv-0184-DFH-TAB, 2009 WL 1404603, at *1 (S.D. Ind. May 15, 2009)(citing, among other cases, *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002)).

Here, there really is no evidence to support the plaintiffs' contention that Mr. Niederauer and Mr. Sternberg possess relevant information, let alone unique or personal knowledge. Certainly, none of the plaintiffs has identified any information these witnesses might possess; indeed, some of the plaintiffs didn't even know who these guys are. At his deposition, Bryan Rule, one of the named plaintiffs, testified that he had never heard of Mr. Sternberg and did not know Duncan Niederauer. Rule Dep., p. 529 (attached as Exhibit D to Bensky's Declaration). Brad Martin, another named plaintiff, testified that he had never had any communications with SLK-Hull Derivatives, that he does not recall ever speaking to Stuart Sternberg and that he is not aware of any information Mr. Sternberg might have that might be relevant to this proceeding. Martin Dep., p. 371 (attached as Exhibit F to Bensky's Declaration). Mr. Martin similarly testified that he

does not recall ever communicating with Duncan Niederauer and that he does not know of any information Mr. Niederauer may have that might be relevant to this proceeding. Martin Dep., p. 372. Brent Starck said the same thing at his deposition; he testified that he did not know either witness and that he was not aware of any information either witness may have that might be relevant to this case. Starck Dep., p. 130 (attached as Exhibit G to Bensky's Declaration).

Nor has plaintiffs' counsel been able to explain why these witnesses should be deposed. At a status conference on May 10, 2013, counsel for the plaintiffs represented that he wanted to depose Mr. Niederauer and Mr. Sternberg because they were the co-managers and principals of the defendants and they oversaw the operations of defendant companies. Transcript of proceedings, p. 9 (attached as Exhibit H to Bensky's Declaration). Counsel conceded that these individuals are very important people, with very important jobs; however, he represented that they have information and that, in particular, Mr. Sternberg is "important." *Id.*, p. 10. Counsel agreed to talk, to try to work something out; however, he did not withdraw the subpoenas; nor did he indicate that he could do without one or both of the witnesses. Thus, as of this moment, it would appear that counsel for the plaintiffs is still taking the position that he has the right to depose both Mr. Niederauer and Mr. Sternberg, though he

has provided no further explanation concerning what, exactly, they can offer in terms of relevant testimony.

To support their position that Mr. Sternberg's testimony is relevant, the plaintiffs reference an affidavit signed by Mr. Sternberg on July 12, 2000 and submitted in an unrelated action. In that affidavit, Mr. Sternberg represented that he joined SLK in 1987 as a specialist and, in 1991 became the Managing Director responsible for SLK's options specialist and market making unit. Sternberg Affidavit, ¶3 (attached as Exhibit I to Bensky's Declaration). The affidavit then goes on to detail SLK's responsibilities with respect to particular options series, as well as the logistics and background information concerning options trading. *Id.*, ¶¶6-15.

Significantly, the affidavit does nothing to undermine the defendants' assertion that these witnesses do not possess unique or personal knowledge about the claims and issues raised in this lawsuit. Indeed, Mr. Sternberg's affidavit was executed July 12, 2000, which is outside the relevant period defined by the plaintiffs in their complaint. *See* Complaint, ¶1(a)(defining the "Relevant Period" as September 11, 2000 through and including, the present day, which would have been January 20, 2004); Amended Complaint, ¶1(a)(defining the "Relevant Period" as April 1, 2001 through the present day, which would have been June 1, 2005); Second Amended Complaint, ¶2 (defining the "Relevant Period" as

April 1, 2001 through October 4, 2005); Consolidated Complaint, 2 (same, which "present day" being November 7, 2005); Amended Consolidated Complaint, ¶I(A)(1)(continuing the use of April 1, 2001 as the start date of the Relevant Period). Given the plaintiffs' definition of the "Relevant Period," what was going on with SLK, the exchanges, options specialists, etc. in July of 2000 simply is not relevant. In fact, in their motion to compel additional 30(b)(6) testimony, the plaintiffs fault GSEC for producing a witness who was only employed by SLK-Hull during the first two years of the relevant time period; Mr. Howe testified that he left his job as an options specialist at AMEX in early 2003. *See* Plaintiffs' Memorandum in Support, p. 3. It is difficult to imagine what they would hope to gain from someone whose knowledge base concerning the relevant issues would have ended even earlier.

The plaintiffs argue that they have uncovered evidence demonstrating that Mr. Niederauer and Mr. Sternberg have knowledge of facts and information relevant to the claims and defenses in this case. For example, the plaintiffs argue that Mr. Niederauer was "in charge of several subsidiaries of GS Group that provided electronic routing and execution services to public customers and broker dealers, and which provided clearing services and sent confirmation statements about securities trades to public customers . . . ." Plaintiffs' Response in Opposition

to Motion for Protective Order, p. 2. But that does not mean he has knowledge concerning the actual issues involved in this case; nor does it say anything about whether that information could be obtained from some other witness, whose deposition would wreak less havoc and cause less of a burden.

On the contrary, the defendants have demonstrated that these witnesses do not possess unique or personal knowledge concerning the specific claims raised in this lawsuit. Although they surely possess knowledge and expertise concerning options trading, that is not enough to justify hauling them in for deposition; too many other witnesses fall into that category to justify requiring these high level individuals to disrupt their schedules and sit for depositions that are unlikely to yield anything of particular relevance or significance.

The Court is persuaded that neither Mr. Niederauer nor Mr. Sternberg possesses the type of unique, personal knowledge that would make their depositions appropriate; the Court is similarly persuaded that, whatever knowledge or information they do possess generally about issues tangentially relevant to this case may be obtained (and has been obtained) from numerous other witnesses. Accordingly, the Court grants the motion for a protective order concerning the depositions of Mr. Niederauer and Mr. Sternberg.

## Conclusion

For the reasons explained above, the Court denies

Plaintiffs' Motion for an order directing the Goldman Sachs Defendants to comply with Rules 30(b)(6) and 30(c) [Docket #1251], and grants GSEC and SLK-Hull Derivatives' motion for protective order concerning plaintiffs' subpoenas to Duncan Niederauer and Stuart Sternberg [Docket #1224].

DATED: September 4, 2013

ENTERED:

_____
ARLANDER KEYS
United States Magistrate Judge